*50 The opinion of the Court was delivered by
Dargan, Ch.
As a general rule, with some few exceptions, it may be stated, that the attributes with which the laws of this country have invested the institution of property, attach alike to equitable as to legal estates (a). Under the maxim, that equity follows the law, the system of trusts has been moulded into an. almost perfect analogy and correspondence with legal estates. Equitable interests admit of the same modifications as to the quantity of right, duration, time, conditions and modes of enjoyment, that appertain to estates at law. The same canons of descent as to real property apply to both systems. They are in the main subject to the same rules of succession. They may alike be held in severalty, in joint-tenancy, coparcenary, and in common. They are devisable and assignable, (b) and what is more germain to the present enquiry, they are both subject to the payment of debts; though the mode of procedure for the relief of the creditor is different. /
There are certain ideas that are inseparable from the institution of property, among the most prominent of which are, the right of alienation, and its being subject to the payment of debts. In all cases like the present, the enquiry must be, whether the debtor has a vested, determinate interest in the equitable estate sought to bo subjected, with the present right of enjoyment in severalty. If he has, the right of the creditor, follows as a corollary in mathematical science does the main proposition. Under the above qualifications and conditions, the creditor is entitled to relief, and in some form or other, the debtor’s estate, be that more or less, should be disposed of or sequestrated for the satisfaction of his debt.
I am not aware of any form or mode by which property, with the present right of several enjoyment, as to either the corpus or the income, may be given to and enjoyed by one, and not be liable for the payment of his debts. The case of married women, and other persons under disability, constitute no exceptions, for such persons are incapable of contracting debts.
*51 A testator or donor may give property with a limitation or condition annexed, that it shall revert, or pass to some third person, on the bankruptcy or insolvency of the first taker, or on an attempt by a creditor to subject it to the payment of his debts: and such a limitation would be valid (a). Or in cases of trust, by the machinery of a shifting use, or a power of revocation, the estate might be made to pass away from the first taker, upon the same or any other contingencies within the period prescribed against perpetuities. It is obvious that such cases as these constitute no exception. Eor the very circumstances that cause the equitable estate of the debtor to be liable, cause it also to pass from him and cease to be Ms property. In the instances supposed, the insolvency of the debtor, or the attempt of the creditor to make the property liable, destroys the debtor’s estate. When the creditor ^stretches forth his hand to grasp it, it eludes him and flits away like a shadow.
If a trust be created with the view of providing against the improvidence of the beneficiary, and it be directed that the rents and profits be paid to him from time to time, at the pure and absolute discretion of the trustee, or as some other appointor to uses, may at his discretion appoint and direct, with a limitation or power to appoint over, to other uses, such a vague, undefined and uncertain interest in the beneficiary, could not be made subject to his debts; because such an interest does not amount to property vested in him. Or if, in the scheme of the trust, the rights of a debtor are so mingled with those of other beneficiaries, that they cannot be separated without injury to his co-cestui que trusts, and thus destroying the scheme of the settlement; inasmuch as there is no present right of several enjoyment, and the Court would refuse a partition, the interest of an indebted beneficiary of such a trust could not be made subject to the payment of his debts. I do not affect to say, that I have laid down all the exceptions, or seeming-exceptions, to the rule, that the debtor’s equitable estates and interests may, in this Court, be subjected to the payment of the *52 claims of bis creditors. But I bave said enough to shew, that there is no qualification of the rule which would protect, or exempt from such liability, the interest of the defendant, John G. Bishop, in the trust estate created by the deed of his father, John Bishop. Before I leave this branch of the case, it will be proper for me to cite some of the cases, on the authority of which the foregoing observations are made.
In Brandon vs. Robinson, (18 Ves. 429,) the trust, (which was created by will,) was that the eventual share of the testator’s son, Thomas Goom, should be laid out by the trustees in the public funds or government securities, “and that the dividends, interest and produce thereof, as the same became due and payable, should be paid by them, from time to time, into his own proper hands, or on his proper order or receipt, subscribed with his own proper hand, to the intent that the same should not bo grantable, transferable, or otherwise assignable, by way of anticipation of any unreceived payment or payments thereof, or any part thereof;” and the will directed, that upon the decease of Thomas Goom, the trustees should pay the said share and dividends, &c., to such persons as would, in the course of administration, be entitled to any personal estate of the said Thomas Goom, as in cases of intestacy.
Thomas Goom became a bankrupt, and the plaintiff was the surviving assignee under the commission; and the bill prayed an execution of the trusts of the will and an account, and that the estate may be sold and the clear residue ascertained, and that the plaintiff might receive such part or share thereof, or interest therein, as he shall be entitled to as assignee, &c. To which bill, the defendants, the trustees, put in a general demurrer. The Lord Chancellor (Eldon) said: “ There is an obvious distinction between a disposition to a man until he becomes a bankrupt, and then over, and an attempt to give Mm property and to prevent his creditors from obtaining any interest in it, though it is his.” “ There is no doubt, that property may be given to a man until he shall become bankrupt. It is equally clear, generally speaking, that if property be given to a man for Ms life, the donor cannot *53 take away the incidents to a life estate. And, as I have observed, a disposition to a man until he shall become bankrupt, is quite different from an attempt to give to him for life, with a proviso that he shall not sell or alien it. If that condition is so expressed, as to amount to a limitation, reducing the interest short of a life estate, neither the man nor his assignees can have it beyond the period limited.”
In Piercy vs. Roberts, (1 Myl. & K. 4,) the testator bequeathed a legacy of ¿6400 to his executors, in trust, to pay the same to his son, Thomas| Jortin Roberts, in such smaller or larger portions, at such time or times, and in such way or manner, as they, or the survivor of them, should, in their judgment and discretion, think best. Thomas Jortin Roberts became insolvent, and took the benefit of the insolvent debtor’s Act. The bill was filed by the assignee of the insolvent debtor’s estate against the executors, to recover the legacy and interest, or so much thereof as remained unpaid. The Master of the Rolls (Sir John Leach) said : “ The question is, whether this legacy passed to the assignee of the insolvent upon the insolvency of the legatee, or whether it may remain in the hands of the executors, to be applied, at their discretion, for the benefit of the legatee. The insolvent being the only person substantially entitled to this legacy, the attempt to continue in him the enjoyment of it, nothwithstanding his insolvency, is in fraud of the law. The discretion of the executors determined by the insolvency, and the property passed by the assignment.”
In Graves vs. Dolphin, (1 Simons, 66,) the testator, Benjamin Graves, gave his real and personal estates to trustees, in trust, (among other things,) to pay an annuity of ¿£500 to his son, John Graves, for the term of his natural life. The testator then proceeded to declare that the said yearly sum of ¿£500, given to his son, John Graves, for his life, was intended for his personal maintenance and support during his natural life, and should not, on any accoimt or pretence whatever, be subject or liable to the debts, engagements or incumbrances of his said son; but that the same should be, for the purposes aforesaid, from time to time, when it *54 should be due, paid over into the proper hands of his son only, and not to any other person or persons whatsoever. He further directed, that the receipt of his son only, should be a good and sufficient discharge to his trustees for the said annuity. John Graves became a bankrupt, and his assignee sold the annuity to the defendant. And the question was, whether the annuity passed to the assignee by virtue of the assignment of the commissioners. It was contended on the part of John Graves, that the annuity did not pass. His counsel relied on the direction in the will, that the annuity should be from time to time paid into the proper hands of John Graves, and that his receipt only should be a sufficient discharge for the same.
The Yice Chancellor, (Sir John Leach,) said: “ The testator might, if he had thought fit, have made the annuity determinable by the bankruptcy of his son; but the policy of the law does not permit property to be so limited, that it shall continue in the enjoyment of the bankrupt, notwithstanding his bankruptcy.” The judgment was that the defendant was well entitled to the annuity.
In Green vs. Spicer, (1 Russ. & M. 395,) the Master of the Rolls decided the same point in favor of an assignee under the insolvent debtor’s Act, although the trustee had a discretion as to the time and manner of applying the rents and profits of the trust estate to the support and maintenance of the beneficiary of the trust, on the ground that the whole beneficial interest in the rents and profits had vested in him.
The case of Hallett vs. Thompson, (5 Paige, 583,) was a suit in behalf of the plaintiff, who was a judgment creditor of the defendant, Thompson. The bill was filed after the return of execution unsatisfied, for the recovery of the debt out of a legacy by the testatrix, in the following words: “ I give and bequeath unto my friend, Jeremiah Thompson, of the city of New York, the sum of $4,000, which sum I nevertheless order my executors to retain in their own hands, and put at interest, and pay the interest thereof yearly to the said Jeremiah, during his natural life; unless the said Jeremiah shall, during his life, by an instrument under his *55 band and seal, require the payment of the said legacy to himself.” In that case, she ordered the legacy and interest to be paid over to the legatee. She then proceeds to direct, if the legacy should not be paid over to Thompson during his life, it should be paid to such person or persons as he should by his last will appoint; and in default of such testamentary direction by him, it was to be paid to his heirs at law. The testatrix further declared it to be her will, that neither the legacy, or the interest thereon, should, in any case, be liable to Thompson’s creditors for any debt due by him. The complainant prayed that Thompson might be decreed to execute such an instrument, as was required by the will to obtain payment of the legacy from the executors, and that the complainant’s judgment might be paid out of the legacy and the interest due thereon. The defendant, Thompson, put in a general demurrer to the bill, for the want of equity. The Chancellor said: “ The legacy in this case is perfectly under the control of Thompson, the legatee, so that he may obtain payment thereof whenever he pleases. This power to compel payment is a beneficial interest in the legatee, which would pass to the assignees under the English bankrupt and insolvent debtor’s Acts.” After commenting upon some of the provisions of the New York revised statutes, that were thought to be applicable to the case, and citing some of the English cases, the Chancellor proceeds to say: “ Independent of any statutory provisions, therefore, I have no doubt it would be competent for this Court, and its imperative duty, to compel the defendant, Thompson, to execute,, this beneficial interest, so as to enable the complainant to obtain payment of the legacy, to be applied in satisfaction of the judgment, as far as it would go.”
“As a general rule,” he further observes, “it is contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his honest creditors.” The demurrer Ayas overruled, and the complainant had a decree for the $4,000 in the hands of the executors, to be applied in satisfaction of his judgment.
*56 Tbe case last cited, suggests a reference, (which. I consider not irrelevant,) to the course which this Court adopts for the relief of creditors, against an insolvent debtor, who has, under a trust, a general power of appointment to uses.
Mr. Sugden, in his work on powers, (page 335,) says: “ Of course the beneficial interest a man takes under the execution of a power, forms part of his estate, and is, like the rest of his property, subject to his debts; nor, indeed, can an appointment be made, so as to protect the funds from the debts of the appointee.”
“ But equity goes a step farther, and holds, that where a man has a general power of appointment over a fund, and he actually exercises the power by deed or by will, the property appointed shall form part of his assets, so as to be subject to the demands of his creditors, in preference to the claims of his legatees or appointees.” He proceeds to say, that the power must be actually executed, as equity never aids the non-oxecution of a power (a); and to draw a distinction as to the rights of voluntary appointees to uses, and those for valuable consideration, the claims of creditors prevailing against the former and not against the latter. This principle of subjecting the appointed estate or fund to the claims of creditors over those of the voluntary appointees, proceeds upon the ground, that a general power of appointment gives to the ap-pointor a beneficial interest in the fund, which amounts to property in him; and that ex equo et bono, his creditors have a right to claim all his estate if necessary, to be applied in satisfaction of their demands.
I will now turn my attention more particularly to the case before the Court. John Bishop, by his deed, dated February 3, 1846, for love and affection and a nominal pecuniary consideration, conveyed to Burrell T. Bishop, his heirs, executors and administrators, two negroes therein particularly described, in trust, to pay over to John G-. Bishop, yearly and from year to year, or as much oftener as necessary or convenient, the nett profits and hire of the negroes, for the better support and maintenance of the *57 ¿aid John G-. Bishop. Tbe deed then gires to tbe trustee, under certain circumstances, amounting almost to 4ii absolute discretion, the power *to sell tbe negroes; and'provides;dn case tbe negroes should be sold, tbat tbe trustee shall pay to John Gr. Bishop tbe interest tbat should accrue on tbe fund arising from tbe sale. Tbe trust further declares, tbat at tbe death- of tbe said John Gr. Bishop, tbe trustee “shall divide one-half of tbe price of tbe ne-groes to tbe issue, tbe children then alive, of tbe said John Gr. Bishop; tbe other half” to tbe trustee and others, tbe donor’s children. It was further declared, tbat if John Gr. Bishop should leave no lawful issue of bis body begotten alive at tbe time of bis death,- tbe share given to bis children should be equally divided among Burrel T. Bishop and others, the donor’s children. There was a farther trust declared in tbe • deed, by which the donor was to be permitted, if absolutely necessary for bis support, to keep and use the negroes, ©r tbe value _of "them, “without any charge for such use, during his natural life; and at his death to be held, enjoyed and disposed as before directed.”
It is not shewn or pretended, that the use of the negroes, or fund arising from their sale, is absolutely necessary or indeed necessary in any sense for the support" of John Bishop, the donor. John Gr. Bishop is alive, but not a resident of the State. The remainder-men have no present right of enjoyment. The complainant has obtained a judgment against John Gr. Bishop ; upon which a fi. fa. has issued, and it has'been returned nulla bona. It has been proved that the defendant has no' other property in the State upon which satisfaction can be made of the execution. And the complainant, by petition setting forth these 'facts, prays that the income which John Gr. Bishop has for life in the aforesaid trust estate, may, by a decree of this Court, be made subject to the satisfaction of his judgment.
After the review which I have made of the authorities which bear on this subject, it would be superfluous to enter into any further argument, for the purpose of.shewing that there is no ground upon which the claim of the creditor can in this instance *58 be resisted. Many of tbe cases that have been cited are much stronger than this, in favor of the beneficiary of the trust. All the cases that bear an analogy to the case before the Court, go to shew that where the beneficiary has a right to the present enjoyment, in severalty of the benefits conferred upon him by the trust, the creditor has an equity that will not be disregarded by the Court, however elaborate may be the attempt to deprive such interest of the incidents of property, and thus to exclude the claims of creditors. The declaration that the provision in the trust was for the better support and maintenance of John Gr. Bishop, if it was intended to exclude the claims of creditors, will be ineffectual for that purpose. For we have seen, that schemes much more skilfully constructed for that object, and with the most studied forms of language, have been overthrown and creditors let in.
It is the opinion of this Court, that the income to which John Gi. Bishop is entitled, in the trust estate created by the deed aforesaid, is subject to the claims of his creditors, and that the circuit decree is right in adjudging that the complainant’s judgment should be paid out of the same.
Having now, at greater length than I had intended, disposed of the merits of the cause, I will briefly advert to a matter of practice. It is the opinion of the Court, that this proceeding should have been in the nature of a creditor’s bill; that is to say, the petitioner should have sued in behalf of himself and the other creditors, who would come in and make themselves parties to the cause, and offer to contribute to the expenses thereof. 'Whenever this Court takes hold of an equity for the purpose of giving relief to a creditor, it will do so in behalf of all the creditors, and will marshal the fund among them according to their respective rights. It is a wholesome rule of practice and will be insisted on. It prevents multiplicity of suits, the accumulation of costs, and injustice among the creditors themselves. It also saves the debtor’s estate from unnecessary charges, and its enforcement will be a mercy to him.
No question as to this point was made at the circuit trial; but *59 it was suggested, that there were other creditors. These creditors, if any such exist, will doubtless be stirred Up, after this decision, to prosecute their claims. It would be best to. dispose of them all at once and in one proceeding. This Court will do now what should have been done on the circuit. It will order the petition to be amended, so as to make it a creditor’s petition, and direct notice to be given to creditors, after the usual form, to appear and present and prove their demands. And after the report on the claims of creditors has come in, the circuit Court will proceed to give judgment, in their favor according to their respective rights.
It is ordered and decreed, that the circuit decree be affirmed so far as it adjudges the fund in question to be subject to the payment of the claims of the creditors of John Gr. Bishop; and so far, also, as it adjudges that the plaintiff has proved his debt.
It is further ordered and<- decreed, that the plaintiff amend his petition, so as to make it conform to the character of a creditor’s bill.
It is further ordered and decreed, that when the petition shall have been so amended, the commissioner give notice to creditors, through the newspaper press, to appear before him and prove their demandé, on oath, on or before the first day of June next, and that the said commissioner report thereon.
It is further ordered and decreed, .that the case be remanded to the circuit Court, for the purpose of hearing said report, and of adjudging the claims of creditors that may be set forth therein, marshalling the fund among them according to their respective rights.
It is further ordered and decreed, that-if no other creditor shall present and prove a claim, or if the fund be sufficient to pay all the claims that are presented and proved, the circuit Court proceed to give a final decree in behalf of the petitioner, and such other creditors as may have presented and proved their demands, for the whole amount of their respective claims.
JOHNSTON, DuNKiN, and WaRDLaw, CC. concurred.

Decree modified.

 Butler’s note to Co. Litt. 280, b.

 2 Story Eq. § 974

 Dommett vs. Bedford, 3 Ves. 149, 6 T. R. 684; Shee vs. Hale, 13 Ves. 404; Yarnold vs. Moorhouse, 1 Russ. & Mylne, 368; 1 Chit. Gen. Pr. 66.

 Holmes vs. Coghill, 12 Ves. 260.